IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THOMAS D. ARTHUR, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 07-0342-WS-C |
| | ) |
| RICHARD ALLEN, etc., et al., | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

    This matter is before the Court on the defendants' motion to dismiss. (Doc. 15). The plaintiff has filed a response and the defendants a reply, (Docs. 17, 18), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant materials in the file, the Court concludes that the motion to dismiss is due to be granted.

    The salient, undisputed facts are these: In January 1992, the plaintiff was sentenced to death (for the third time) for a murder committed in 1982. His conviction and sentence became final in approximately June 1998, and his state collateral proceedings became final in May 2002.

    In July 2002, Alabama adopted lethal injection as its method of execution, applicable to all existing death row inmates who did not opt for electrocution within thirty days. The plaintiff did not opt for electrocution.

    The plaintiff filed a federal habeas petition in April 2001, which the trial court dismissed as untimely in December 2002. The Eleventh Circuit affirmed in June 2006, which opinion was modified slightly on petition for rehearing and rehearing en banc in August 2006. The dismissal of the plaintiff's federal habeas petition became final on April 16, 2007, when the Supreme Court denied his petition for writ of certiorari. The state filed a motion to set an execution date the next day. The Alabama Supreme Court granted the motion on June 22, 2007, setting an execution date of September 27, 2007.

The plaintiff filed this Section 1983 action on May 14, 2007, challenging the constitutionality of Alabama's lethal injection protocol, in particular its use of a three-drug sequence including a short-acting anesthetic (sodium pentothal), a drug inducing muscle paralysis (pancuronium bromide), and a final, lethal drug (potassium chloride); its procedures (or lack thereof) for their administration; and its standards (or lack thereof) for persons involved in the execution process.  All allegations concerning the protocol are made "upon information and belief."  The plaintiff seeks to "enjoin Defendants from executing Plaintiff with inadequate anesthesia and execution procedures that violate the Eighth Amendment prohibition against cruel and unusual punishment."  (Doc. 1).

The defendants do not dispute that the plaintiff's claim is properly characterized as a challenge to the conditions of confinement under Section 1983 and not as a successive habeas petition.  *See generally Hill v. McDonough*, 126 S. Ct. 2096 (2006) (holding that a challenge to Florida's three-drug lethal injection protocol could be brought under Section 1983).  Instead, they argue that the plaintiff's claim: (1) is barred by the statute of limitations; (2) is barred by the doctrine of laches; and (3) fails to state a claim upon which relief can be granted.  Because it is dispositive, the Court addresses only the second of these arguments.

"Injunctive relief is an equitable remedy that is not available as a matter of right."  *Grayson v. Allen*, 2007 WL 2027903 at *3 (11th Cir.), *cert. denied*, 2007 WL 2086662 (2007).  When the equitable relief sought is a stay of execution, sensitivity to the state's "strong interest in enforcing its criminal judgments without undue interference from the federal courts" requires the federal courts to "apply a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay."  *Jones v. Allen*, 485 F.3d 635, 638 (11th Cir.) (internal quotes omitted), *cert. denied*, 127 S.Ct. 2160 (2007).  The same equitable principles, and the same strong presumption, obtain when the equitable relief sought is an injunction.  *Grayson*, 2007 WL 2027903 at *3; *accord*

*Rutherford v. McDonough*, 466 F.3d 970, 976 (11th Cir.) ("*Rutherford II*"), *cert. denied*, 127 S.Ct. 465 (2006).

The initial question, then, is whether the plaintiff "unreasonably delayed" in filing this action. *Grayson*, 2007 WL 2027903 at *3, *6. There are at least four possibilities for excusing the plaintiff's delay of almost five years following Alabama's adoption of lethal injection as its method of execution,[1] but none of them could suffice to defeat the defendants' motion to dismiss.

First, the plaintiff could plead reasonable ignorance of Alabama's lethal injection protocol. In this regard, the complaint alleges that, "[u]pon information and belief, Alabama's execution procedures are deemed confidential, and the Defendants will not publicly disclose any details about the procedures involved in carrying out executions in Alabama." (Doc. 1 at 6, ¶ 19).[2]

The Eleventh Circuit, however, has rejected the proposition that the confidentiality of the protocol excuses a plaintiff's delay, for reasons largely present here. As in *Jones*, any assertion of reasonable ignorance "is belied by [the plaintiff's] complaint, which alleges 'upon information and belief'" that Alabama uses the three-drug cocktail; "[t]hus, [the plaintiff] knew of the basis of his claim before he filed his complaint." 485 F.3d at 640 n.3.[3] Also as in *Jones*, the plaintiff "knew or should have known before 2006 that the

---

[1] There may be others (such as, perhaps, a sufficiently debilitating physical or mental condition), but the plaintiff asserts none. Indeed, he does not clearly assert any of the four possibilities discussed in text, but the Court addresses them because they appear in recent Eleventh Circuit opinions.

[2] Notably, the complaint does not allege that, despite the protocol's confidential nature, the plaintiff and his counsel were until recently ignorant about it. Likewise, the plaintiff in brief describes the protocol as "secretive" and asserts that the state "refuses to provide even the most basic information about these procedures," but he does not assert that he was unable to obtain this information through other means. (Doc. 17 at 11-12).

[3] As in *Jones*, *id*., despite general allegations about staffing and training, the "crux" of the plaintiff's complaint is that the cocktail runs an unacceptable risk of causing the

State uses the same three-drug cocktail as nearly every other state where substantially similar challenges have been made." *Id.*   The plaintiff should have known this from the published report, in February 2006, that of the 37 states employing lethal injection, 35 used the same three-drug cocktail.  *Evans v. Saar*, 412 F. Supp. 2d 519, 522 (D. Md. 2006).  As discussed below, the ingredients of that cocktail had been identified in *Evans* and numerous other published opinions before 2007.

The *Grayson* Court followed *Jones*, concluding that allegations in the complaint substantively identical to those in *Jones* and this case "belied" the plaintiff's "assertion that he was unaware of Alabama's three-drug protocol."  2007 WL 2027903 at *5 & n.3. The *Grayson* Court also concluded that, since the plaintiff's allegations were based "on information and belief" rather than knowledge, "there is no reason why [he] could not have filed a similar § 1983 complaint based 'upon information and belief' months, if not years, earlier."  *Id.*  Because this plaintiff pleads based on information and belief, *Grayson*'s reasoning applies here as well.

The plaintiff's case for reasonable ignorance is even weaker than that of the plaintiffs in *Jones* and *Grayson*.  As he acknowledges, (Doc. 17 at 13), a number of Alabama cases substantively similar to the plaintiff's were filed in 2006.  Each of them contains the allegation that Alabama employs the same three-drug cocktail the plaintiff now alleges.  *McNair v. Allen*, 2:06-cv-696-WKW (M.D. Ala.) (filed August 7, 2006); *Callahan v. Allen*, 2:06-cv-919-WKW (M.D. Ala.) (filed October 11, 2006); *Jones v. Allen*, 2:06-cv-1032-MHT (M.D. Ala.) (filed November 1, 2006); *Grayson v. Allen*, 2:06-cv-1032-WKW (M.D. Ala.) (filed November 17, 2006).  If the plaintiffs in these cases were able to make this allegation in the summer and fall of 2006, there can be no good reason the plaintiff here could not have made the same allegation long before May 2007. *See Hill v. McDonough*, 464 F.3d 1256, 1259 (11th Cir.) (given that a fellow prisoner had challenged Florida's lethal injection protocol years before, "Hill cannot claim that it was

---

execution to be accompanied by agonizing pain and conscious suffocation.

impossible for him to initiate his federal suit any earlier."), *cert. denied*, 127 S.Ct. 465 (2006). Even assuming that the plaintiffs in these cases had access to sources that this plaintiff did not, once the complaints were filed they were publicly available online, and little effort would have been required to locate them through the CM/ECF system. At least after *Hill* was handed down in June 2006, there was every incentive to do so.[4]

A second possible basis for excusing the plaintiff's delay would be reasonable ignorance that Alabama's protocol is potentially subject to constitutional challenge. The plaintiff makes no such argument, and it would not succeed if he did. By 2004, there were at least four published cases raising the same challenges to the three-drug protocol as the plaintiff mounts. *See Jones v. Allen*, 483 F. Supp. 2d 1142, 1153 (M.D. Ala. 2007) (citing *Cooper v. Rimmer*, 358 F.3d 655 (9th Cir. 2004); *Harris v. Johnson*, 376 F.3d 414 (5th Cir. 2004); *State v. Webb*, 750 A.2d 448 (Conn. 2000); and *Sims v. State*, 754 So. 2d 657 (Fla. 2000)). The Eleventh Circuit in *Jones* held that these four cases were sufficient to support a finding that the plaintiff was or should have been aware of the risks of the cocktail and of a potential challenge to the procedure "well before he filed suit" in November 2006. 485 F.3d at 640 n.3.[5]

The four cases cited in *Jones* are only the tip of the iceberg. What follows is a sampling of opinions articulating plaintiffs' arguments similar to those the plaintiff raises here that were published prior to *Hill* (a comparable list of unpublished opinions can be located online with dizzying speed): *Taylor v. Crawford*, 445 F.3d 1095, 1097 (8th Cir. 2006); *Rutherford v. Crosby*, 438 F.3d 1087, 1094 (11th Cir. 2006) ("*Rutherford II*"); *Morales v. Hickman*, 438 F.3d 926, 927 (9th Cir. 2006); *In re: Williams*, 359 F.3d 811, 814 (6th Cir. 2004) (Suhrheinrich, J., concurring); *Robinson v. Crosby*, 358 F.3d 1281,

---

[4]The plaintiff has been represented by current counsel since at least September 2002. *Arthur v. Haley*, 2:01-cv-00983 (N.D. Ala.) (Doc. 50).

[5]The *Jones* Court did not require any showing that the plaintiff or his counsel were actually aware of these cases.

1285 n.4 (11th Cir. 2004); *Cooey v. Taft*, 430 F. Supp. 2d 702, 706-07 (S.D. Ohio 2006); *Crowe v. Head*, 426 F. Supp. 2d 1310, 1353 (N.D. Ga. 2005); *Bell v. True*, 413 F. Supp. 2d 657, 736 (W.D. Va. 2006); *Evans v. Saar*, 412 F. Supp. 2d 519, 521 (D. Md. 2006); *Reid v. Johnson*, 333 F. Supp. 2d 543, 548 (E.D. Va. 2004); *Bieghler v. State*, 839 N.E.2d 691, 695 (Ind. 2005); *Abdur'Rahman v. Bredesen*, 181 S.W.2d 292, 302 (Tenn. 2005); *Ex parte O'Brien*, 190 S.W.2d 677, 678 (Tex. Crim. App. 2006) (Cochran, J., concurring). A fair number of these cases identified experts supporting the plaintiffs' claims. The volume of cases raising challenges similar to the plaintiff's naturally rose following *Hill*, including the four filed in the Middle District of Alabama within a few months thereafter. Indeed, *Hill* standing alone strips away any argument of reasonable ignorance of a possible constitutional challenge, since it repeated the standard allegations concerning the three-drug cocktail in a national forum. 126 S. Ct. at 2100.

A third argument for excusing the plaintiff's delay would be that he could not pursue his claim before *Hill* was decided, since Eleventh Circuit precedent held that such a claim could be maintained only under Section 2254. The plaintiff does not make this argument, and the *Grayson* Court rejected it on two grounds, both applicable here. First, nothing precluded the plaintiff from filing suit to challenge the Eleventh Circuit rule, as indeed the *Hill* plaintiff did. Second, even if pre-*Hill* delay could be excused by the adverse appellate precedent, the *Grayson* plaintiff delayed five more months after *Hill* was decided, and ten months after certiorari was granted. 2007 WL 2027903 at *4. The plaintiff here, who filed suit more than six months after the plaintiff in *Grayson*, can fare no better than his predecessor.

Finally, a plaintiff could argue (though the plaintiff has not) that it would have been premature to file suit before the denial of his habeas petition became final upon the denial of certiorari. The Eleventh Circuit has declined to determine precisely when such a suit becomes ripe, but it has clearly rejected the notion that denial of certiorari is required. On the contrary, the *Jones* Court stated that, "given the extremely small chance

of securing certiorari review ..., it was all but guaranteed that [the plaintiff] would die by lethal injection" once the appellate court denied relief.  485 F.3d at 639 n.2.  That date arrived in this case in August 2006, some nine months before the plaintiff filed suit.

In light of the above, it is clear that the plaintiff unreasonably delayed in filing this action.  The second question that must be answered in determining if a "strong presumption" against a stay should be applied is whether the plaintiff's claim "could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay."  Assuming without deciding that the same question must be answered when the plaintiff seeks not a stay but injunctive relief, the answer is plainly in the affirmative.  The latest date on which the plaintiff's unreasonable delay began (and this requires the generous assumption that the plaintiff remained reasonably ignorant of Alabama's three-drug cocktail until fellow Alabama prisoners began filing suit) is on or shortly after August 7, 2006.  The plaintiff's scheduled execution date is September 27, 2007, over a year later.  Discovery, the dispositive motions and/or evidentiary hearing that would ensue, the Court's ultimate ruling, and any appeal thereof, could have been accomplished within this time frame.  *See Rutherford II*, 466 F.3d at 974 (court considers the time needed for "discovery, evidentiary hearing, and decision on the merits"); *Jones*, 485 F.3d at 639 n.2 (court considers the time needed for appeal).

Because the plaintiff unreasonably delayed in bringing this action, and because, but for that delay, his claim could have been resolved on the merits without impacting his scheduled execution date, the Court must indulge a "strong presumption" against the grant of injunctive relief.  It is incumbent upon the plaintiff to overcome this presumption, but he has not attempted to do so.

The circumstances of this case in fact bolster, rather than mitigate, the presumption.  First, the plaintiff's unreasonable delay has made the difference in whether or not his claim can be resolved on the merits before his scheduled execution date.  By delaying his suit until May 2007, the plaintiff left an impossibly short four months for the

entire process.[6]  The plaintiff's unreasonable delay is thus far from harmless.

Second, the plaintiff did not file this action until after the Supreme Court had denied certiorari on his habeas petition, even though, once the Eleventh Circuit denied rehearing and rehearing en banc in August 2006, "it was all but guaranteed that [he] would die by lethal injection," and even though such a delayed filing "is simply too late to avoid the inevitable need for a stay of execution."  *Jones*, 485 F.3d at 639 n.2.  Such conduct "leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out."  *Id*. at 640 (internal quotes omitted); *accord Grayson*, 2007 WL 2027903 at *7 ("If Grayson truly had intended to challenge Alabama's lethal injection protocol, he would not have deliberately waited to file suit until a decision on the merits would be impossible without entry of a stay or an expedited litigation schedule.").  The equitable pendulum thus swings even further away from the plaintiff.

The plaintiff complains that laches "requires the Court to engage in a fact-specific inquiry that is inappropriate at this stage of the litigation" and must await a motion for summary judgment.  (Doc. 17 at 8, 25).  As a threshold matter, the equitable timeliness of the plaintiff's complaint is not measured by traditional laches principles but by the specialized "equitable principles at issue when inmates facing imminent execution delay

---

[6]The inadequacy of four months to resolve such a case is captured by the actual sequence of events in this litigation, which reflects no unusual delays (except perhaps with respect to service of process).  The complaint was filed on May 14, 2007, and process was served two weeks later.  (Doc. 10-11).  The defendants received a one-week extension to file a responsive pleading, due to three other lethal injection cases (including *Grayson*) with pressing briefing deadlines.  (Docs. 13-15).  The motion to dismiss was filed on June 25, the plaintiff's opposition on July 16, and the defendants' reply on July 26.  (Docs. 15, 17, 18).  The Court's resolution of the motion comes two weeks after it became ripe.  Were the motion denied, only seven weeks would remain before the plaintiff's scheduled execution date in which to conduct discovery, entertain dispositive motions and/or hold an evidentiary hearing, enter a ruling, and perfect and conclude an appeal.

in raising their § 1983 method-of-execution challenges." *Grayson*, 2007 WL 2027903 at *3.[7] Moreover, the mere fact that the defendants characterized their defense as one of laches does not justify ignoring the specialized principles in favor of the traditional laches approach.[8]

Nor is there any impediment to resolving the timeliness issue on motion to dismiss. In *Rutherford I* and *II*, the Eleventh Circuit upheld the trial court's dismissal of the plaintiff's complaint the day after it was filed. *Rutherford v. Crosby*, 2006 WL 228883 (N.D. Fla. 2006). This is not surprising, since the relevant facts made the focus of *Jones*, *Grayson*, *Rutherford II* and *Hill* are based on the complaint, the procedural history, and publicly available sources. The plaintiff insists that resolution of the defendants' motion is premature because his "knowledge of the facts underlying this action is disputed." (Doc. 17 at 26). The inquiry, however, is what he (or his counsel) knew or "should have known," and what they should have known is established by sources independent of the plaintiff. Moreover, postponing resolution of the timeliness issue in this fashion would

---

[7]Thus, the defendants need not show the "undue prejudice" that is an element of laches, "classic elements" of which "include unavailability of witnesses, changed personnel, and the loss of pertinent records," *Equal Employment Opportunity Commission v. Dresser Industries, Inc*., 668 F.2d 1199, 1203 (11th Cir. 1982) — matters which prejudice a defendant in his ability to defend the litigation. Of course, the equitable principles in play here do not ignore prejudice but find it, as a matter of law, in the damage caused by an unreasonably delayed Section 1983 challenge to the interests of the state and victims "in the timely enforcement of a sentence." *Jones v. Allen*, 485 F.3d at 638 (internal quotes omitted); *accord Grayson*, 2007 WL 2027903 at *8. It is precisely the prejudice to these interests that compels a presumption against injunctive relief when the plaintiff unreasonably delays bringing suit. *Id*. at *3.

[8]This is clearly seen in *Grayson*, where the defendants articulated their defense as one of laches, *Jones v. Allen*, 2007 WL 1491009 at *3 (M.D. Ala. 2007), the district court analyzed it as such, *id*. at *5-11, and the Eleventh Circuit then merely noted this history and thereafter ignored laches altogether. 2007 WL 2027903 at *3; *see also Williams v. Allen*, 2007 WL 2206846 at *3-4 (M.D. Ala. 2007) (although the defendants called their defense one of laches, the district court instead followed the "well-established equitable principles" of *Grayson* and other cases).

effectively eviscerate the *Hill* Court's admonition that "federal courts can and should protect States from dilatory or speculative suits." 126 S.Ct. at 2104. The plaintiff's suggested procedure would enable any prisoner to file a Section 1983 challenge shortly prior to his execution date with confidence that the court, unable to rule quickly on a timeliness objection, would be required to enter a stay of execution.[9] The perversity of this result would alone compel rejection of the plaintiff's proposal.

For the reasons set forth above, the defendants' motion to dismiss is **granted**. Judgment shall be entered accordingly by separate order.

DONE and ORDERED this 10th day of August, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[9]Because the timeliness of a request for stay is measured the same as the timeliness of a request for injunctive relief, the court could not refuse a stay any more quickly than it could dismiss the case.